## Stryjewski v. Union

*Daniel Sherman,* for plaintiffs.

*Wilderman, Markowitz & Kirschner,* for defendants.

SLOANE, J., June 6, 1970.—This matter is before this court on final hearing. Plaintiffs' complaint sought an injunction against picketing of their beer distributing establishment and damages for losses incurred, allegedly because of such picketing. During the course of these proceedings, the defendant union (union) agreed to stop picketing plaintiffs' establishment. Accordingly, this disposition will deal with the question of liability and of damages. The union's answer and new matter denies the illegality of such picketing and alleges that the picketing was peaceful, proper and constitutionally protected. The union raised other defenses to plaintiffs' request for damages, particularly dealing with the jurisdiction of this court and to plaintiffs' failure to mitigate damages.

This case has a long and protracted history. The action was begun early in 1967. Plaintiffs and five other beer distributors sought a preliminary injunction against picketing by the union of their establishment; the request of these plaintiffs for a preliminary injunction was heard by Judge Greenberg; the matter was resolved as to five plaintiffs, but not the instant case. After hearing, Judge Greenberg found he was without jurisdiction to issue a preliminary injunction in this case; his decision was affirmed by a ma-

jority of our Supreme Court: Stryjewski v. Local Union No. 830, 426 Pa. 512. At the time of the hearing before Judge Greenberg and before his order, the National Labor Relations Board had not declined jurisdiction. But, the Supreme Court noted, in footnote 9 of its opinion, "Since the hearing in the court below, the NLRB has declined to take jurisdiction. However, such post-trial declination plays no part in determining the propriety of the refusal to issue an injunction on the facts existing *at the time of hearing*": 426 Pa., at page 517. The Supreme Court remanded the case to this court and said:

"When the matter comes on for final hearing, the fact that the NLRB has declined to act will furnish a basis upon which the court below can now assume jurisdiction and proceed to the determination of the cause on its merits": 426 Pa., at page 519.

This, after hearing and consideration, I proceed to do. While the record is replete with contradictory assertions and testimony, I find the following testimony to be credible:

Plaintiffs are proprietors of a neighborhood beer distributorship. Their son is the only other person who works in their establishment.

The union attempted to unionize plaintiffs' establishment because (1) it wanted plaintiffs and their son to join the union, and (2) the union wanted plaintiffs to conform to opening and closing hours, generally agreed upon and respected by competitors of plaintiffs who had joined the union. Indeed, plaintiffs were the only beer distributors in Philadelphia who had not signed or otherwise made an agreement with the union in this regard. The union's attempt was carried out by picketing plaintiffs' place. The union's picketing was conducted for a period from January 10, 1967, to January 20, 1967, and from Febru-

ary 9, 1967, to December 15, 1967, the date picketing stopped.

The picketing was alternately peaceful and violent. There were periods of time only when only a negligible number of pickets would picket plaintiffs' place. At other times, and on a frequent basis, however, pickets would physically prevent customers from entering plaintiffs' place and deliveries from being made. On other occasions, the pickets, who would number 12 and 16, would mass in such a way to intimidate plaintiffs' customers so that customers would not enter plaintiffs' place even though physically able to do so. On still other occasions, pickets would surround a customer and move towards him as he tried to walk into plaintiffs' place, forcing him to go around the pickets. Further, the pickets frequently would subject deliverymen and customers to verbal abuse. Truck drivers delivering supplies to plaintiffs' place were intimidated by pickets, physically threatened and told to "get out of here" by the pickets.

The union, through its members, also sought to intimidate plaintiffs and their family. Plaintiffs and their son were threatened with physical violence, their daughter was followed to school by union members in an effort to intimidate her and to make plaintiffs' resistance to the picketing crumble. On at least one occasion, union members physically interfered with the making of beer deliveries by plaintiffs' son.

This conduct by the union, through its members, had two basic effects. First, beer suppliers would not deliver their beer to plaintiffs, and, second, customers of plaintiffs were intimidated and prevented from patronizing plaintiffs.

On these findings of fact, the following principles guide us in our disposition of this case:

Violent or mass picketing by the union in this case

gives rise to damage action. See Wortex Mills, Inc. v. Textile Workers Union of America, 380 Pa. 3, where it was stated that an action for damages may be founded against a union on a common-law claim. This proceeding was brought in equity but there was a prayer for damages with the request by plaintiffs for an injunction. ". . . once equitable jurisdiction has attached, Equity has jurisdiction to do *complete* justice between the parties and, inter alia, award damages for tort . . . , as well as grant other equitable relief": 380 Pa., at page 11.

As such, the union is liable to plaintiffs for the damages plaintiffs have suffered from the violent and abusive conduct by the union: Wortex Mills, supra. The conduct by the union which only resulted in intimidation to both plaintiffs and their customers and suppliers also furnishes the basis for a damage award. See Westinghouse Electric Corporation v. United Electrical, Radio & Machine Workers of America, 383 Pa. 297, wherein the court held that it should be noted that mass picketing is illegal and subject to injunction though there is no attempt to pass through a mass picket line to test whether the line was intended to be an effective obstructing or blocking of passage into and from the place being picketed.

Having found that the union is liable to plaintiffs, the remaining issues in this case relate to damages and the liability of defendants other than the union itself.

Damages are difficult to compute.

Basically, however, plaintiffs incurred a loss of $10,633.55 in 1967. In 1966, the year before, when plaintiffs' establishment was free from picketing, plaintiffs reached a profit of $7,314.89. While it is difficult to estimate what the potential profits of plaintiffs' business would have been in 1967 and

thereafter, these figures, together with the other considerations shown by the evidence indicate that the net damage that was suffered by plaintiffs as a result of the activity and mass picketing was $18,000.

Plaintiffs urge that the union's peaceful picketing also was illegal, conducted for illegal purposes and, hence, gives rise to additional damages. I do not find this assertion to be valid as a matter of fact. As a matter of law, I do not have to decide here whether or not the union's peaceful picketing is illegal and gives rise to a damage claim. All damage suffered by plaintiffs from the union's activity was substantially caused by the union's violent and mass activities and picketing. The peaceful picketing by the union added nothing to the actual injury suffered by plaintiffs.

The individual defendants are not liable individually. In making this determination, I am guided by our Supreme Court's discussion in Wortex Mills, supra, wherein the union was found liable, but not union officers. As that court stated:

"We find that there was no evidence to prove that any of the individual defendants committed or participated in or *expressly* authorized the illegal acts hereinabove recited, nor was the evidence sufficient to enable a Chancellor to reasonably and legitimately infer that the *mass* picketing and other illegal acts were authorized or planned or assented to or ratified by the officers of the defendant unions. They are therefore not liable for the damages": 380 Pa., at pages 18-19.

I find as above and now find:

1. For plaintiffs against defendant union in the amount of $18,000.

2. For the individual defendants.